# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE ROMEO,<br>    Plaintiff,<br><br>    v.<br><br>UNUMPROVIDENT CORPORATION,<br>    Defendant. | :<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:   NO. 07-1211<br>:<br>:<br>:<br>: |

## Memorandum and Order

YOHN, J.                                                                                         February ___, 2008

Plaintiff Jacqueline Romeo filed this action against UnumProvident Corporation ("Unum") alleging breach of contract (Count I) and bad faith (Count II) as a result of the termination of plaintiff's disability insurance benefits from March 2001 to March 2004. Plaintiff also alleges in Count III that Unum is estopped from exercising the setoff provision of the insurance contract as it stated it would do in January 2005 and June 2006. Unum has filed motions for summary judgment, asserting that Counts I and II are barred by the applicable statutes of limitations and that plaintiff cannot prove the necessary elements of Count III. For the reasons that follow, I will grant Unum's motion as to Counts I and II, but will deny Unum's motion as to Count III.

I.      **Factual and Procedural Background**

On November 1, 1992, plaintiff purchased the disability insurance policy at issue in this

suit. (Romeo Aff. ¶ 1.) Plaintiff's policy provided that, during a period of disability, benefits would be paid up to the maximum monthly amount of $1800.00, reduced by fifty percent of any monthly earnings and by one hundred percent of any social insurance benefits for which plaintiff would be eligible, not to exceed eighty percent of the maximum monthly amount. (Def.'s Mem. in Support of Def.'s Mot. for Summ. J. as to Count III, Ex. D, at 3, 8.) Social insurance benefits are defined by the policy to include government retirement and disability fund benefits, which are in turn defined to include "disability compensation . . . under any Federal, State, County, Municipal or other governmental subdivision retirement and disability fund for which [the insured] may become eligible." (*Id.* at 7-8.)

Plaintiff was unable to return to her job as a contract specialist for the United States government after being injured in a motor vehicle accident in August 1994. (*Id.* ¶¶ 3-8.) Then, sometime in 1995, she began receiving $1800.00 per month from Unum pursuant to the disability insurance policy she had purchased in 1992. (*Id.* ¶ 10.) After Unum began paying plaintiff disability insurance benefits in 1995, a Unum representative, Bob Silverberg, asked plaintiff whether she was receiving benefits in addition to the disability insurance benefits. (*Id.* ¶ 30.) Plaintiff explained that she was receiving government disability benefits.[1] (*Id.*) In 1997, Silverberg assured plaintiff that her disability insurance benefits would not be reduced by the

---

[1] In her affidavit, plaintiff reports that she began receiving disability benefits from the federal government in the amount of $1321.13 per month on May 15, 1999. (*Id.* ¶ 9.) The context of her affidavit and statements in her brief in opposition to Unum's motions for summary judgement suggest she began receiving government disability benefits in 1994 or 1995, however, and that the year 1999 is a typographical error. Whether she began receiving government disability benefits in 1999 or earlier is not consequential here.

2

amount of government disability benefits she was receiving (i.e., there would be no "setoff").[2] (*Id.* ¶ 31; Def.'s Mem. as to Count III, Exs. B, E.)

On March 3, 2001, plaintiff received a letter from Unum, dated February 28, 2001, explaining that "no further benefits are due under your claim for disability benefits" because "we find that you are not disabled from the sedentary occupation of a Contract Specialist." (Def.'s Mem. in Support of Def.'s Mot. for Summ. J. as to Counts I and II, Ex. B, Letter from Robin J. Cassavant, Senior Claim Representative, The Paul Revere Life Ins. Co., to Jacqueline Romeo 3 (Feb. 28, 2001); *see also* Romeo Dep. 128:5-131:11, Sept. 21, 2007 (addressing plaintiff's understanding of Unum's termination of her disability insurance benefits).) Plaintiff was invited to "submit additional information for further consideration of [her] claim" or to "send a written request for an appellate review." (*Id.* at 4.) Plaintiff appealed the determination and sent in additional medical information to Unum; her appeal was denied on July 6, 2001. (*See* Romeo Aff. ¶ 18; Def.'s Mem. as to Counts I and II, Ex. D.)

In early 2004, plaintiff sent in additional medical information, and, as a result, her claim was reopened effective December 18, 2003. (Romeo Aff. ¶¶ 20-21; Pl.'s Resp. to Def.'s Mem. as to Counts I and II, Ex. B, Letter from Kristina McCarthy, Senior Disability Benefit Specialist, The Paul Revere Life Ins. Co., to Julian Wessell 2-3 (July 14, 2004).) The insurance company

---

[2] Since 1995, the government disability benefits and Unum insurance benefits (along with some investment income) have been the only sources of plaintiff's income. (Romeo Aff. ¶ 11.) Plaintiff asserts that, because Silverberg assured her that no offset would be taken, she did not change her lifestyle or spending habits after becoming disabled. (Romeo Aff. ¶ 38.) She "received just enough income to cover [her] credit card payments and other expenses, including a mortgage." (*Id.*)

3

determined that she was entitled to disability insurance benefits from March 18, 2004.[3] (Pl.'s Resp. to Def.'s Mem. as to Counts I and II, Ex. B, Letter from Kristina McCarthy, Senior Disability Benefit Specialist, The Paul Revere Life Ins. Co., to Julian Wessell 3 (July 14, 2004).)

In early 2005, plaintiff received a letter from Unum, dated January 24, 2005, explaining that her disability insurance benefits would be reduced by her social insurance benefits, decreasing her monthly disability insurance benefit to $507.00. (*See* Def.'s Mem. as to Count III, Ex. C, at 1-2.) Despite the letter, it appears that no setoff was actually taken at that time. (Romeo Aff. ¶ 33.) Plaintiff received a second letter from Unum, dated June 8, 2006, regarding the reduction of her disability insurance benefits in light of her social insurance benefits and explaining that Unum would reduce the amount of plaintiff's disability insurance benefits to $478.87 per month, beginning with the July 6, 2006 payment. (*See* Pl.'s Resp. to Def.'s Mem. as to Counts I and II, Ex. B, Letter from Kristina McCarthy, Senior Disability Benefit Specialist, The Paul Revere Life Ins. Co., to Julian Wessell 3 (July 6, 2004) (summarizing the earlier letter).) Nevertheless, in a letter dated August 11, 2006, Unum "agreed to make a current payment at the full benefit amount and issue the amounts that were offset in the recent past with a reservation of all rights until the issue can be fully addressed." (*See* Pl.'s Resp. to Def.'s Mem. as to Counts I and II, Ex. B, Letter from Barbara S. Carra, Assistant Vice President & Counsel, UnumProvident Corp., to Julian Wessell 3 (Aug. 11, 2006).) Plaintiff asserts that "[f]rom my

---

[3] Plaintiff asserts that she understood Unum to be considering paying her benefits during the period from March 2001 to March 2004 and that she sent Unum medical reports on March 27, 2001; May 22, 2001; and in June 2001. (Romeo Aff. ¶¶ 24-25.) Plaintiff states in her affidavit that she understood that until she initiated this action, negotiations with Unum for payment of disability insurance benefits during the period from March 2001 to March 2004 were ongoing. (*Id.* ¶¶ 26-27.)

memory, the setoff was taken for 2 months, June and July[] 2006." (Romeo Aff. ¶ 36.) It is unclear whether Unum paid the difference between the maximum benefit and the benefit plaintiff actually received during the two months in which the setoff was taken.

Plaintiff filed the instant suit in the Philadelphia County Court of Common Pleas on June 15, 2006. Unum properly removed the case to this court on March 26, 2007. Discovery closed on December 15, 2007. Thereafter, Unum filed two motions for summary judgment: one as to Counts I and II, asserting that the statute of limitations had expired as to plaintiff's breach of contract and bad faith claims based on the termination of benefits from March 2001 to March 2004; and the second as to Count III, asserting that plaintiff could not prove reliance, a necessary element of her estoppel claim, which she asserts bars Unum from implementing its 2005 and 2006 statements that the setoff provision would now be applied to her benefits.

**II.    Standard of Review**

A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986) (quoting Fed. R. Civ. P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a

rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, Ltd.* 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). The nonmovant must present concrete evidence supporting each essential element of its claim. *Celotex*, 477 U.S. at 322-23. The nonmovant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III.  Discussion

#### A.  Counts I and II:  Breach of Contract and Bad Faith Statutes of Limitations

Unum correctly argues that Counts I and II are barred by the applicable statutes of limitations.[4] The limitations period with respect to a particular action begins to run at the time the cause of action accrues. 42 Pa. Cons. Stat. § 5502(a). "Under Pennsylvania law, a cause of action accrues at 'the time when the plaintiff could have first maintained the action to a successful conclusion.'" *City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 121 (3d Cir. 1993) (quoting *Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983)). More specifically, a breach of contract cause of action accrues when the breach occurs,

---

[4] A federal court sitting in diversity applies the substantive law of the relevant state. *See Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007). That substantive law includes the statute of limitations. *Id.* Here, the parties have both assumed Pennsylvania law applies, and I will apply Pennsylvania law.

*see Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 494-95 (E.D. Pa. 2007) (citing *S.T. Hudson Eng'rs, Inc. v. Camden Hotel Dev. Assocs.*, 747 A.2d 931, 934 (Pa. Super. Ct. 2000)), so a claim arising from denial of an insurance claim accrues when the insured first knows that benefits have been terminated, *see Caruso v. Life Ins. Co. of N. Am.*, No. 00-2329, 2000 WL 876581, at *2 (E.D. Pa. 2000) (beginning the limitations period with respect to a suit for benefits under an ERISA long-term disability insurance plan when the insured "*first* kn[ew] that the benefit ha[d] been infringed or removed" (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1181 (3d Cir. 1992) (emphasis added)). Similarly, an action for bad faith denial of coverage accrues when the insured first learned that the insurance company was denying coverage. *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 632 (E.D. Pa. 2004) (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1040 (Pa. Super. Ct. 1999)). Statutes of limitations begin to run as soon as the right to sue arises, regardless of whether the full extent of the harm is known at that time. *See Adamski*, 738 A.2d at 1043.

Plaintiff's disability benefits were terminated by letter to plaintiff dated February 8, 2001.[5] Plaintiff testified that she received the letter on March 3, 2001. (Romeo Dep. 128:16-22, Sept. 21, 2007.) Plaintiff agrees that March 3, 2001 is the date she became aware Unum "failed in the performance of its obligations under the contract, mainly, the obligation to compensate

---

[5] Plaintiff's disability benefits were terminated because the insurer found that "you are not disabled from the sedentary occupation of a Contract Specialist. Therefore, no further benefits are due under your claim for disability benefits." (Def.'s Mem. as to Counts I and II, Ex. B, Letter from Robin J. Cassavant, Senior Claim Representative, The Paul Revere Life Ins. Co., to Jacqueline Romeo 3 (Feb. 28, 2001).) The setoff provision was not a factor in the insurance company's determination.

plaintiff for disability benefits from March 2001 to March 2004."[6] (*Id.* at 129:23-130:4; Compl. ¶ 24.[7]) March 3, 2001 was also, according to plaintiff, the date she became aware that Unum had "unreasonabl[y] and in bad faith" stopped paying disability benefits. (Romeo Dep. 130:5-131:11; Compl. ¶ 29.) Therefore, plaintiff's causes of action for breach of contract and bad faith accrued on March 3, 2001.

Plaintiff argues that the limitations periods did not begin to run on March 3, 2001 because the insurance company suggested that it would review the termination of plaintiff's benefits or would reopen the claim if plaintiff submitted additional information and medical evidence of disability. This argument is unpersuasive, especially given that, in her Complaint, plaintiff alleges that her benefits were "terminated" and "stopped" on March 3, 2001. (*See* Compl. ¶¶ 9, 10; *see also* Romeo Dep. 130:5-24 (explaining plaintiff's understanding when she received the letter that her disability insurance benefits had been "stopped" and "cut[] off" and that she "w[as]n't entitled to disability benefits anymore").) Additionally, the letter plaintiff wrote requesting review of the decision to stop paying her benefits refers to "this decision to *terminate* my claim." (Def.'s Mem. as to Counts I and II, Ex. D (emphasis added).)

In plaintiff's affidavit, she refutes her statement at her deposition that her benefits were stopped on March 3, 2001: "After considering the events carefully, I do not feel that my

---

[6] As noted above, plaintiff appealed Unum's determination, and the appeal was denied on July 6, 2001. Both parties refer only to the original denial in March 2001 for purposes of the statute of limitations question. If the parties had used the date on which plaintiff's appeal was denied, the result with respect to the statute of limitations would be the same.

[7] Plaintiff's Complaint is verified by her as is required by Pennsylvania pleading rules. Therefore, it may be treated as an affidavit for purposes of summary judgment to the extent it is made on the basis of personal knowledge. *See* James Wm. Moore et al., Moore's Federal Practice ¶ 56.14[1][a] (3d ed. 2007).

disability payments were really "terminated" because I started receiving them again in March, 2004, effective 12/18/03 . . . ." (*Id.* ¶ 28.)  Given the allegations in plaintiff's Complaint and other evidence of her understanding of Unum's action at the end of February 2001 with respect to her disability insurance benefits, her affidavit does not create a genuine issue of material fact as to the date on which the limitations period begins.  Counts I and II of her Complaint clearly rest on Unum's failure to pay plaintiff disability benefits beginning in March 2001, regardless of how that action is now characterized by plaintiff.

   Plaintiff also argues that her cause of action for bad faith accrued after March 3, 2001 because bad faith activity occurred as late as June 1, 2006.  (*See* Pl.'s Resp. 14 (arguing that, "in taking the setoff to [p]laintiff's . . . benefits in June[] and July[] 2006[, Unum] engaged in a separate act of bad faith, constituting [a] separate tort").)  Plaintiff believes this later act allegedly taken in bad faith saves Count II from being barred by the statute of limitations.  (*Id.* at 15.)  For this proposition, she relies on *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1105-06 (E.D. Pa. 1992). The district court in *Rottmund* held that a bad faith claim accrues at the time of the initial denial of an insured's claim.  It further held, however, that if activity after the initial denial of an insured's claim ("post-enabling date activity") constitutes  "separate acts of bad faith, not a continuation of a previous denial," the insurer can be held liable for those additional acts, notwithstanding the expiration of the limitations period as to the initial denial.  *Id.* at 1106; *see also Precision Door Co., Inc. v. Meridian Mutual Ins. Co.*, No. 04-1194, 2005 WL 2039177, at *5-7 (E.D. Pa. Aug. 23, 2005) (determining whether alleged "additional independent factual bases for [the insured's] bad faith claim" were distinct from the initial denial of coverage); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1038 (Pa. Super. Ct. 1999) (finding that each of

9

plaintiff's allegations of bad faith related to conduct that began before the effective date of the statute).

In the instant case, I need not decide whether the alleged bad faith action taken by Unum on June 1, 2006—namely, Unum's application of the setoff provision in the insurance contract to decrease the amount of plaintiff's benefit—was an act of bad faith separate from the initial termination of coverage at the end of February 2001 because plaintiff did not allege this act of bad faith in her Complaint.  (*See* Compl. ¶¶ 26-29 (encompassing Count II, plaintiff's bad faith claim).)  Plaintiff first made this additional bad faith claim in her response to Unum's motion for summary judgment as to Counts I and II, which was filed after the close of discovery.  Federal Rule of Civil Procedure 8 requires that a complaint provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Williams v. New Castle County*, 970 F.2d 1260, 1265-66 (3d Cir. 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiff failed to plead any grounds for her bad faith claim other than the termination of her benefits in February 2001.  Therefore, only this ground is taken into account in calculating the limitations period.

The limitations period with respect to each claim must be analyzed separately because different causes of action have different limitations periods.  Pennsylvania law provides for a four-year limitations period for breach of contract actions, 42 Pa. Cons. Stat. § 5525(a)(8), and a two-year limitations period for statutory bad faith actions, *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007).  Plaintiff argues, however, that her claims are governed by Pennsylvania's six-year statute of limitations, which applies to claims not governed by any other statute of limitations.

Plaintiff first relies on *Gluck v. UniSys Corp.*, 960 F.2d 1168, 1181 (3d Cir. 1992), for the proposition that, when a plaintiff seeks to reinstate an improperly removed, non-bargained-for benefit (as plaintiff asserts she is doing in Count I), the six-year limitations period applies. Plaintiff argues that a large portion of the disability insurance benefits she received from Unum were not bargained for because the insurance company paid plaintiff the maximum benefit, notwithstanding her receipt of government disability benefits; i.e., Unum did not exercise the setoff provision. Plaintiff fails to consider that *Gluck* dealt with the question of what statute of limitations to apply in a case brought pursuant to the *federal* Employee Retirement Income Security Act ("ERISA"). ERISA "does not set any limitations period for non-fiduciary claims brought pursuant to its civil enforcement provision, 29 U.S.C. § 1132," requiring the court to "apply the statute of limitations for the state claim most analogous to the ERISA claim pursued." *Id.* at 1179. The insurance policy at issue in the instant case was privately purchased by plaintiff (Compl. ¶ 4), meaning that federal ERISA law does not govern the resolution of this case. Instead, plaintiff's claims are governed by state law, making the Third Circuit's holding in *Gluck*, which is federal common law, inapplicable. Indeed, the Third Circuit introduced its holding by noting that the limitations periods it announced applied "when ERISA does not provide an applicable statute of limitations and the most appropriate limitations period of Pennsylvania is borrowed." *Id.* at 1181.

Pennsylvania has applied its four-year statute of limitations governing contracts broadly: to promissory estoppel claims, *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000), as well as to various forms of implied contract claims, 42 Pa. Cons. Stat. § 5525(a)(4); *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997). The *Gluck* court addressed concerns that "a

party who has bargained for some benefit will, or ought to, know his rights, and will immediately recognize any breach thereof," 960 F.2d at 1181, and, presumably conversely, that a party who has not, will not. Those concerns are not relevant in a case like the one before me, in which plaintiff, by her own admission, was well aware of Unum's stated intention not to exercise the setoff provision in the insurance contract.

Moreover, plaintiff's breach of contract and bad faith claims, as pled in her Complaint, involve only the insurance company's conclusion that, as of the end of February 2001, plaintiff was no longer disabled. The setoff provision was not pled with respect to these claims. The payment or nonpayment of disability benefits was the central component of the insurance contract. For all these reasons, the situation before me is not controlled by the Third Circuit's holding in *Gluck*.

Plaintiff additionally argues that, because her complaint includes both legal and equitable claims, the six-year statute of limitations applies. This argument is likewise unavailing. Each claim is evaluated separately for purposes of the statute of limitations, meaning that the limitations period relevant to Count III, alleging an equitable claim, may be different from the limitations periods relevant to Counts I and II, alleging legal claims.

For all the foregoing reasons, Pennsylvania's four-year statute of limitations applies to plaintiff's breach of contract claim, and its two-year statute of limitations applies to her bad faith claim. Therefore, the limitations period with respect to plaintiff's breach of contract claim expired on March 3, 2005, and the limitations period with respect to her bad faith claim expired on March 3, 2003. The instant suit was not filed until June 15, 2006. Counts I and II are time barred, and so I will grant Unum's motion for summary judgment as to those claims.

### B.     Count III:  Estoppel

Plaintiff has titled Count III "Equitable Estoppel." Although the issue appears to be not entirely settled, a number of federal and state cases hold that a cause of action does not exist for equitable estoppel. *See, e.g.*, *Jodek Charitable Trust, R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 477 (E.D. Pa. 2006) (citing cases); *Prusky v. Phoenix Life Ins. Co.*, No. 02-6010, 2003 WL 1256225 (E.D. Pa. Mar. 4, 2003) (same). Equitable estoppel, a defensive doctrine, is similar to promissory estoppel, a cause of action. *See* Black's Law Dictionary 590 (8th ed. 2004) (defining equitable estoppel as a defensive doctrine); *id.* at 591 ("Promissory is distinct from equitable estoppel in that the representation at issue is promissory rather than a representation of fact."); *see also Jodek Charitable Trust, R.A.*, 412 F. Supp. 2d at 477 (noting that "[t]he only sense in which there is a cause of action for 'equitable estoppel' is insofar as the phrase is sometimes used interchangeably with promissory estoppel, a related but distinct concept"). As other courts have done, I will construe Count III as a claim based on promissory estoppel. *See, e.g., id.* at 477-78.

The elements of promissory estoppel are "1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Crouse*, 745 A.2d at 610. Unum argues that summary judgment should be granted in its favor as to plaintiff's estoppel claim because plaintiff cannot show reasonable reliance, a necessary element of any estoppel claim,[8] *see, e.g.*,

---

[8] Specifically, Unum argues that, because the disability insurance policy provides for benefits on a month-to-month basis upon continuing proof of entitlement, plaintiff cannot have a reasonable expectation of any future benefits. (Def.'s Mem. as to Count III, at 5.) I read plaintiff's claim to assert, however, that for the months in which Unum pays her disability insurance benefits, Unum is estopped from exercising the setoff provision.

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717-18 & 718 n.2 (Pa. Super. Ct. 2005) (citing *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997); *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa. Super. Ct. 1997); *Rinehimer v. Luzerne County Cmty. Coll.*, 539 A.2d 1298 (Pa. Super. Ct. 1988)).  At issue here is whether plaintiff's reliance on the statement of Unum's representative that the setoff provision in the insurance contract would not be exercised, when the language of the policy was contrary to the representative's assurance, was reasonable.

"The general rule in Pennsylvania, as elsewhere, is that courts are required to give effect to the language of contracts, including insurance policies, if that language is clear and unambiguous.  However, . . . 'in certain situations the insured's reasonable expectations will be allowed to defeat the express language of an insurance policy.'"  *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136 (3d Cir. 2005) (internal citations omitted) (citing *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).  The Third Circuit held in *Standard Venetian Blind* that an insured is bound by the clear and understandable language in the policy.  469 A.2d 566.  Yet this holding "concerns situations where the insured has no reasonable basis for believing that a policy covers events that it does not"; that is, "when the insurer has [not] told the insure[d] that a policy would cover certain events when by its terms it does not."  *Bensalem Twp.*, 38 F.3d at 1312 n.5.

Especially in the insurance context, it may be reasonable for an insured to rely on representations made by an agent of the insurance company.  *See Tran*, 408 F.3d at 136.  "Courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their

14

customers. Thus . . . where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy[,] that expectation will prevail over the language of the policy." *Bensalem Twp.*, 38 F.3d at 1311. Whether reliance on a representation is reasonable is generally a question of fact to be decided by a jury. *See, e.g.*, *Tran*, 408 F.3d at 139 (discussing reliance in the context of fraud and negligent representation). Because plaintiff here, like the plaintiff in *Bensalem Township*, "could conceivably prove that [she] had a reasonable expectation of coverage despite policy language that appears to those not familiar with [her] relationship with [Unum] unambiguously to preclude coverage," *see* 38 F.3d at 1312, I will deny Unum's motion for summary judgment as to Count III.

### IV.     Conclusion

Because the statutes of limitations applicable to plaintiff's breach of contract and bad faith claims have expired, I will grant Unum's motion for summary judgment as to those claims. I will deny Unum's motion for summary judgment as to plaintiff's estoppel claim.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE ROMEO,  :  Plaintiff,  :  :  v.  :  :  UNUMPROVIDENT CORPORATION,  :  Defendant.  :  :  : | CIVIL ACTION  NO. 07-1211 |

# Order

YOHN, J.

AND NOW, this _____ day of February 2008, upon consideration of defendant's summary judgment motions (Docket Nos. 4 & 19), plaintiff's response thereto, defendant's replies, and plaintiff's surreply, IT IS HEREBY ORDERED that:

1. The motion of defendant, UnumProvident Corporation, for summary judgment as to Counts I and II is GRANTED. Judgment is entered in favor of UnumProvident Corporation and against Jacqueline Romeo on Counts I and II.

2. The motion of defendant, UnumProvident Corporation, for summary judgment as to Count III is DENIED.

                                                                                                                        s/ William H. Yohn Jr.
                                                                                                                      William H. Yohn Jr., Judge